Harold **ROTHSTEIN** and David M. Rothstein, As Executors of the Estate of Alexander Rothstein, Deceased, and Reba Rothstein, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. N 76–167.**

United States District Court, D. Connecticut.

June 9, 1983.

Howard A. Jacobs, Jacobs, Jacobs & Grudberg, P.C., Ira B. Grudberg, Jonathan Katz, New Haven, Conn., for plaintiffs.

Alan H. Nevas, U.S. Atty., Frank H. Santoro, Asst. U.S. Atty., New Haven, Conn., Vincent James Ferraro, James W. Littlefield, Trial Attys., Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EGINTON, District Judge.

The court, having tried the above entitled matter with the aid of an advisory jury, now finds the following facts and states the following conclusions of law pursuant to Federal Rule of Civil Procedure 52(a):

### FINDINGS OF FACT

1. The plaintiffs, Harold Rothstein and David M. Rothstein, are executors of the estate of Alexander Rothstein, and reside in the State of Connecticut. The plaintiff, Reba Rothstein, resides in Florida.

2. The defendant is the United States of America.

3. In 1951, Alexander Rothstein and Abraham Savin formed a real estate holding company named Industrial Developers, Inc., (IDI).

4. In 1951, Rothstein and Savin bought a parcel of land at 157–175 Park Avenue, East Hartford, Connecticut.

5. Rothstein and Savin each contributed real property worth $30,000 to IDI and each received 300 shares of stock in IDI.

6. Rothstein and Savin received their stock in return for conveying the land to the corporation.

7. The corporation proceeded to construct warehouses for rental on the property.

8. On February 18, 1957, Alexander Rothstein, as grantor, created an irrevocable trust for the benefit of his three children, Harold, David and Edna, by transferring his 300 shares of IDI stock to the trust. At that time, and at all relevant times for purposes of this lawsuit, the sole asset of IDI was the real estate, with improvements, located at 159–175 Park Avenue, East Hartford, Connecticut.

9. The trustee of the trust established by Alexander Rothstein was his wife, Reba Rothstein.

10. As the owner of the IDI stock, the trust was entitled to receive any dividends paid by IDI and required to distribute those dividends to its beneficiaries, Rothstein's children, at least semiannually. Plaintiff's Exhibit A attached to the complaint is a true and correct copy of the Trust.

11. As of 1964, no dividends had been paid on the IDI stock.

12. As of 1964, the Rothstein children never received any income from the trust or its property.

13. In October, 1964 Alexander Rothstein purchased all of Savin's IDI stock for $500,000, which price was paid in January, 1965.

14. On November 13, 1964, Rothstein purchased the trust's 300 shares of IDI from the trustee, his wife, for $320,000.

15. Rothstein and the trust, acting through Reba Rothstein, agreed that the trust would be paid by means of a promissory note in the amount of $320,000, which

note was executed by Mr. Rothstein on November 13, 1964.

This note bore interest of 5% per annum payable semiannually beginning May 14, 1965, and principal payments were payable as follows:

The sum of $24,000 on or before November 13, 1969;

The sum of $25,000 on or before November 13, 1970;

The sum of $50,000 on or before November 13, 1971; and

The sum of $50,000 on or before November 13 of each calendar year thereafter until the full sum of $320,000 was paid.

16. The Trust's IDI stock was delivered to Alexander Rothstein on November 13, 1964 and the trust retained no pledge or other security interest in the stock.

17. In January of 1965, Alexander Rothstein, who then owned all the outstanding stock of IDI, dissolved IDI and had all of the assets of IDI transferred to himself, which assets consisted of the real estate described in paragraph 8 above.

18. In January, 1965, Alexander Rothstein refinanced the property by replacing the existing mortgage of less than $200,000 with one of $700,000 to Equitable Life Insurance Company.

19. With the proceeds of the mortgage, Alexander Rothstein paid Savin the purchase price for his stock.

20. On February 8, 1965, Alexander Rothstein gave the trustee, Reba Rothstein, a second mortgage on the East Hartford real estate to secure the $320,000 promissory note which Alexander Rothstein had given to the trustee in November of 1964.

21. As a result of the liquidation of IDI in January of 1965, Alexander and Reba Rothstein claimed a short-term capital loss on their 1965 Federal Income Tax Return. For purposes of computing the loss, the Rothsteins claimed a basis in the IDI stock of $820,000 (consisting of the $500,000 paid to Savin, plus the $320,000 note given to the trust).

22. After an audit of Alexander and Reba Rothstein's 1965 tax return, the Internal Revenue Service assessed a deficiency in the amount of $56,664.15 on October 12, 1966, on the ground that the trust established by Alexander Rothstein should be disregarded, and Alexander Rothstein's claimed $320,000 basis in the IDI stock should be accordingly reduced, to $30,000, his original basis prior to the creation of the Trust.

23. In computing the deficiency the IRS used a fair market value of $950,000 for the property.

24. In July, 1967 Alexander and Reba Rothstein paid the assessment and in January, 1969 filed with the Internal Revenue Service a claim for refund with interest of the sum claimed in this action.

25. Alexander Rothstein made the annual interest payments to the trust.

26. In 1969, the Rothstein children purchased the real estate from their father, subject to the first mortgage to Equitable Life Insurance Company.

27. In 1969, the promissory note from Alexander Rothstein to Reba Rothstein, trustee, was renegotiated, allowing for payments of $12,800 per year for 25 years commencing on November 13, 1969.

28. Alexander Rothstein died in 1969.

29. On May 22, 1974, the IRS disallowed Alexander and Reba Rothsteins' claim for refund on the 1965 tax year.

30. Following the denial of the refund claim, the estate of Alexander Rothstein and Reba Rothstein timely filed the instant action for refund of 1965 taxes.

31. This matter was tried to a jury on September 21, 22, and 23, 1982.

32. After all of the evidence was presented to the jury, the jury was asked to answer four special interrogatories. The interrogatories and the jury's answers were as follows:

1. Was the sale by the Trustee, Reba Rothstein, to the grantor, Alexander Rothstein of 300 shares of IDI stock for $320,000 for adequate consideration?

Yes X
No___
2. Was the trustee, Reba Rothstein, subservient to the grantor, Alexander Rothstein, when she accepted a note from Alexander Rothstein in the amount of $320,000 in exchange for the 300 shares of IDI stock from the trust?
Yes X
No___
3. Was adequate security provided by Alexander Rothstein for the $320,000 note given by him in November, 1964 to Reba Rothstein as trustee?
Yes___
No X
4. Did the note for $320,000 from Alexander Rothstein to Reba Rothstein, as trustee for the children, provide for an adequate rate of interest?
Yes X
No___

## CONCLUSIONS OF LAW

The principal issue which this court must decide, based upon the advisory findings of the jury, is whether the trust established in 1957 by Alexander Rothstein was a "grantor trust" for purposes of Section 675(3) of the Internal Revenue Code of 1954 (26 U.S.C.).

Section 675(3) provides:
The grantor shall be treated as the owner of any portion of a trust in respect of which—

\*    \*    \*    \*    \*    \*

(3) *Borrowing of the trust funds* —The grantor has directly or indirectly borrowed the corpus or income and has not completely repaid the loan, including any interest, before the beginning of the taxable year. The preceding sentence shall not apply to a loan which provides for adequate interest and adequate security, if such loan is made by a trustee other than the grantor and other than a related or subordinate trustee subservient to the grantor.

The jury has found that Alexander Rothstein failed to provide adequate security for the $320,000 promissory note (Special Interrogatory 3), and that the promissory note was accepted by the trust from the grantor, Alexander Rothstein, by a trustee who was subservient to the grantor (Special Interrogatory 2). It is undisputed that the trustee, Reba Rothstein, was related to the grantor, Alexander Rothstein, and it is undisputed that the $320,000 promissory note was not paid in full before January 1, 1965. In fact, no principal or interest at all were paid before January 1, 1965.

Thus, the particular issue for the court to resolve is whether, within the meaning of the provisions of Section 675(3) of the Internal Revenue Code of 1954, Alexander Rothstein's exchange of a $320,000 promissory note for the trust's entire corpus was a direct or indirect borrowing or loan.

The plaintiffs appear to raise only two arguments in opposing any application of Section 675(3), and only one of the two is seriously presented. Plaintiffs' Brief in Support of Judgment, at pages 3 and 4, finds an echo in Plaintiffs' Revised Proposed Findings of Fact 26, 30, and 36 in seeming to claim that the government should be barred from contending to this court and the advisory jury the applicability of Internal Revenue Code Section 675(3). However, in Plaintiffs' Reply Brief any contention that the government is so barred is expressly disavowed by a footnote on page 1 thereof. Indeed, this court would give short shrift to any such claim, in the light of a long line of cases finding its origin in *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1931) in which the Supreme Court noted that the "ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability." The court added that the taxpayer "is not entitled to a refund unless he has overpaid his tax." As the Supreme Court later commented in *Rothensies v. Electric Battery Co.*, 329 U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946), a taxpayer seeking to recover for a claimed over payment based upon a transaction is subject to

have that transaction "examined in all its aspects." The court pointed out that the court rendering judgment should endeavor to do "justice in view of the one transaction as a whole." This doctrine was applied many years ago in the Second Circuit in a line of decisions commencing with *Cuba Railroad Co. v. United States*, 254 F.2d 280, 282 (2d Cir., 1958).

Turning to the one serious contention advanced by the plaintiffs, the court must determine whether application of Section 453 of the Internal Revenue Code (26 U.S.C.) would preclude the government from seeking to apply the provisions of Section 675(3) where a trust situation is involved. This court has absolutely no difficulty in holding that the two sections are not mutually exclusive. As the plaintiffs themselves concede at page 8 of their original brief in support of judgment, Section 453 of the Internal Revenue Code is designed to alleviate a hardship on the *seller* by permitting an installment seller to report a proportionate share of the gain during each year in which he receives proceeds from the sale.

As the government properly notes in its Reply Brief at pages 5 and 6 thereof, the government's position does not foreclose or nullify the purposes of Section 453 but does impose some rigid requirements on the use of administrative powers by the grantor of a trust, with adverse tax consequences resulting from the grantor being treated as the owner of the trust, if the restrictions are not satisfied.

Accordingly, this court holds that the receipt by Alexander Rothstein of the trust's entire corpus in exchange for a promissory note was a loan or borrowing within the meaning of Internal Revenue Code Section 675(3), or, in the alternative, was an indirect loan or borrowing. Thus, the plaintiffs have failed to establish an overpayment of 1965 income tax.

Judgment will enter for the defendant, with an allowance of costs to be taxed against the plaintiffs.

It is SO ORDERED.